Irving T. BARTLETT, as Executor of the Last Will and Testament of Jessie I. Bartlett, Deceased,

v.

The UNITED STATES.

No. 190–55.

United States Court of Claims.

Dec. 5, 1956.

720

Edward S. Bentley, New York City, for plaintiff.

David R. Frazer, Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice, for defendant. Andrew D. Sharpe, Theodore M. Garver, and James P. Garland, Washington, D. C., on the briefs.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

MADDEN, Judge.

The plaintiff claims that the estate of his mother, Jessie I. Bartlett, of which he is the executor, was required to pay a larger amount of estate taxes than it rightfully owed. He sues to recover the excess. The asserted excess of taxes was attributable to what the Government said was a "reversion" in a piece of real property, which reversion was said to have been owned by Jessie I. Bartlett at the time of her death. If she did own such a reversion, it was a taxable part of her estate under section 811(c) of the Internal Revenue Code of 1939, 53 Stat. 121 as amended by section 7(a) of the act of October 25, 1949, c. 720, 63 Stat. 891. 26 U.S.C.A., known as the Technical Changes Act of 1949.

Jessie I. Bartlett in 1927 owned a piece of real estate in the State of New York consisting of 13 acres with a dwelling house on it. On March 28, 1927, she conveyed the property to one Costabell by a deed which, on its face, was absolute. But on the same day Costabell conveyed the property to Edward E. Bartlett, Jr.,

a son of Jessie I. Bartlett, as trustee, to be held by him for certain uses and purposes stated in the deed. He was to hold the property for the joint use and benefit of Jessie and her husband during their joint lives, and thereafter for the use of the survivor of them, for his or her life. Upon the death of the survivor, the trust was to terminate, and the property was to be owned absolutely by Edward E. Bartlett, Jr., hereinafter called Edward, if he was then living. If Edward was not then living, the property was to go to the persons to whom the survivor of Jessie and her husband had by will appointed the property. If the survivor had not made such an appointment, the property was to go "to such person or persons who would take the corpus had said survivor died intestate, seized or possessed of the corpus."

Section 811(c) (2) makes property taxable to one's estate if he

"has retained a reversionary interest in the property, arising by the express terms of the instrument of transfer and not by operation of law, * * *."

A reversion, generally speaking, is an interest which is not disposed of by a conveyance and hence, by mere inertia, remains in the grantor. But the particular kind of a "reversionary interest" to which section 811(c) (2) applies is one which the grantor has expressly provided for in the conveyance.

The interest asserted by the Government to have been a reversionary interest in Jessie I. Bartlett at the time of her death, was the potential right of her heirs to take the property. By the terms of the conveyance from Costabell, Jessie's heirs were to get the property at her death if (1) Edward predeceased his mother and father (which did not happen); (2) Jessie survived her husband (which happened); and (3) Jessie made no will appointing the property to others (which happened). As to (3) Jessie in her lifetime released her power of appointment for a tax purpose not here relevant.

On the surface of things, one might conclude that the interest in question did not arise out of a transfer by the decedent Jessie at all; that her only conveyance was the absolute conveyance to Costabell, and that the interests created by Costabell's deed have no relation to the estate tax statute. But the conveyance to Costabell was a wash transaction, obviously made with the understanding that he would immediately make the deed which he did make back to the trustee and the others who received interests under his deed. We will disregard the deed to Costabell and treat his conveyance as if it had been made by Jessie herself. We have then, a conveyance by Jessie, the owner in fee simple, in which she "creates" (we use the word without prejudice) a joint life estate in herself and her husband, and a sole life estate in the survivor of them, and, at the end of the life estates, fee simple interests contingent in fact in five different persons or classes of persons, one of the classes being her own heirs at law. Did she create five different contingent remainders, "a contingent remainder with a quintuple aspect" one might say, or four such remainders and one reversionary interest?

The Government says that she did the latter. It says that according to the law of New York, if an owner makes a conveyance and uses language such as would create a remainder interest, if the interest were given to persons other than the grantor's heirs, the language is, presumptively, ineffective if it purports to create a future interest in the grantor's heirs, and the interest remains undisposed of in the grantor, and passes to his heirs by descent, if he does not make other disposition of the interest in his lifetime or by his will. The doctrine, known as the doctrine of "worthier title" is of ancient origin and is akin to the Rule in Shelley's case. The reason for the latter rule was an inheritance tax reason, that the crown should not be deprived of the feudal dues payable upon an inheritance, by the device of setting up the title of land for two generations by convey-

ing to one for life with remainder to his heirs.

The New York doctrine, of which the leading case is Doctor v. Hughes, 225 N. Y. 305, 122 N.E. 221, opinion by Judge Cardozo, in effect treats a purported conveyance to one's heirs as being presumptively, in legal effect, a conveyance to one's self, and says that since inertia would have accomplished all that the purported conveyance accomplished, and since title by inheritance is "worthier" than title by purchase, the heirs, if they in fact ever get the property will be regarded as having gotten it by inertia, rather than by the purported conveyance to them.

The doctrine does not have the irremediable effect which the Rule in Shelley's case had when it was in full flower. If one then conveyed to A for life and then to his heirs, no amount of explanation that he did not mean to convey a fee simple to A would prevent the conveyance from having that consequence. That was the correct attitude, so long as there was an important tax policy involved in the rule. The rule of course outlived the policy by centuries. The "worthier title" doctrine is only presumptive in effect. As we understand it, if the grantor makes evident in the conveyance that he does not intend to create a future interest in himself, or in his estate at his death, but in that individual or those individuals who may turn out to be his heirs at law when he dies, then the grantor has, by his conveyance, parted with the interest, and the described individuals take by the conveyance and not by descent.

To one not learned in New York law it would seem that the conveyance itself would, in most instances, be sufficient evidence of the intent of the grantor. But Judge Cardozo's successors have been obliged to search for circumstantial evidence of the intent of the grantor.

The plaintiff relies on Engel v. Guaranty Trust Co., 280 N.Y. 43, 47, 19 N.E.2d 673, where the court emphasized that the rule was only presumptive, and did not apply it in a case fairly comparable to the instant one. He relies on Richardson v. Richardson, 298 N.Y. 135, 81 N.E. 2d 54, decided in 1948, where the court again did not apply the rule, but analyzed and considered all the principal cases, and said that the New York decisions had attached considerable importance to at least three factors which were present in the Richardson case. They were (1) that the settlor has made a full and formal disposition of the corpus of the estate, i. e., disposed of the principal on several contingencies other than having it revert to himself, (2) that the settlor has made no reservation of power to grant or assign an interest in the property in his lifetime, and (3) that he has reserved only a testamentary power of appointment.

All three of these factors were present in the instant case. As to (1) we have seen that, upon the termination of the life estates, the property might have gone to any one of five different persons or classes of persons, and that only one of the five contingent takers was the heirs of the grantor. As to (2) we take it to mean that the grantor has reserved no power to grant or assign the corpus of the property in his lifetime, and that was true in the instant case. The third factor was also present in our case. In Commissioner of Internal Revenue v. Hall's Estate, 2 Cir., 153 F.2d 172, it was held that there was no reversionary interest, though the grantor reserved a life estate in himself, and provided that if other interests following the life estate should fail, the property should be divided among his next of kin.

The Government urges that the purported trust created in Edward was a "dry trust" which, by the Statute of Uses and the comparable New York law, was no trust at all and which therefore left or placed the legal interests in the property, in those persons who would have had equitable interests if the trust had been valid. We think the trust was by no means "dry". The right of occupancy of Jessie and her husband during their lives was at their own option. If they had chosen not to occupy the land, the

trustee would have had a most complicated task of renting and collecting rents, deciding whether and for how much and on what terms to sell the property if the life tenants would consent to sell it, and if it was sold, investing and conserving a very large sum of money.

But we also think that it is immaterial whether the trust was an active trust, or no trust at all. We think that if Jessie had by a deed of conveyance not purporting to create a trust, granted the present and future interests which Costabell's deed granted, the "worthier title" question and its answer would have been just the same.

■ The Government urges that the fact of Jessie's life estate is important, since it was an assignable interest in her. The plaintiff says that it was not assignable, since such a trust is, in New York, a spendthrift trust. We are surprised that one should be able to create a spendthrift trust for himself. Further, the plaintiff's contention assumes that there was an active and effective trust. But we regard all this discussion as immaterial. The existence of a power in the settlor to assign during his lifetime, which is discussed in the cases, must relate to a power to assign an interest in the *corpus*. The normal power to assign which is an incident of a reserved life estate, would seem to have no relation to the disposition of the principal of the property after the life estate is ended.

We conclude that the decedent did not have a reversionary interest within the meaning of section 811(c) (2) and that the plaintiff is entitled to recover, with interest as provided by law, and judgment will be entered to that effect. The amount of the recovery will be determined in further proceedings under Rule 38(c), 28 U.S.C.A.

It is so ordered.

JONES, Chief Judge, and LARAMORE, WHITAKER and LITTLETON, Judges, concur.