Madden, Judge,
delivered the opinion of the court:
The plaintiff claims that the estate of his mother, Jessie I. Bartlett, of which he is the executor, was required to pay a larger amount of estate taxes than it rightfully owed. He sues to recover the excess. The asserted excess of taxes was attributable to what the Government said was a “reversion” in a piece of real property, which reversion was said to have been owned by Jessie I. Bartlett at the time of her death. If she did own such a reversion, it was a taxable part of her estate under section 811 (c) of the Internal Revenue Code of 1939, 53 Stat. 121 as amended by section 7 (a) of the act of October 25,1949, c. 720,63 Stat. 891, known as the Technical Changes Act of 1949.
*40 Jessie I. Bartlett in 1927 owned a piece of real estate in the State of New York consisting of 13 acres with a dwelling house on it. On March 28, 1927, she conveyed the property to one Costabell by a deed which, on its face, was absolute. But on the same day Costabell conveyed the property to Edward E. Bartlett, Jr., a son of Jessie I. Bartlett, as trustee, to be held by him for certain uses and purposes stated in the deed. He was to hold the property for the joint use and benefit of Jessie and her husband during their joint lives, and thereafter for the use of the survivor of them, for his or her life. Upon the death of the survivor, the trust was to terminate, and the property was to be owned absolutely by Edward E. Bartlett, Jr., hereinafter called Edward, if he was then living. If Edward was not then living, the property was to go to the persons to whom the survivor of Jessie and her husband had by will appointed the property. If the survivor had not made such an appointment, the property was to go “to such person or persons who would take the corpus had said survivor died intestate, seized or possessed of the corpus.”
Section 811 (c) (2) makes property taxable to one’s estate if he
has retained a reversionary interest in the property, arising by the express terms of the instrument of transfer and not by operation of law, * * *.
A reversion, generally speaking, is an interest which is not disposed of by a conveyance and hence, by mere inertia, remains in the grantor. But the particular kind of a “re-versionary interest” to which section 811 (c) (2) applies is one which the grantor has expressly provided for in the conveyance.
The interest asserted by the Government to have been a reversionary interest in Jessie I. Bartlett at the time of her death, was the potential right of her heirs to take the property. By the terms of the conveyance from Costabell, Jessie’s heirs were to get the property at her death if (1) Edward predeceased his mother and father (which did not happen); (2) Jessie survived her husband (which happened); and (3) Jessie made no will appointing the property to others (which happened). As to (3) Jessie in her lifetime released her *41 power of appointment for a tax purpose not here relevant.
On the surface of things, one might conclude that the interest in question did not arise out of a transfer by the decedent Jessie at all; that her only conveyance was the absolute conveyance to Costabell, and that the interests created by Costabell’s deed have no relation to the estate tax statute. But the conveyance to Costabell was a wash transaction, obviously made with the understanding that he would immediately make the deed which he did make back to the trustee and the others who received interests under his deed. We will disregard the deed to Costabell and treat his conveyance as if it had been made by Jessie herself. We have then, a conveyance by Jessie, the owner in fee simple, in which she “creates” (we use the word without prejudice) a joint life estate in herself and her husband, and a sole life estate in the survivor of them, and, at the end of the life estates, fee simple interests contingent in fact in five different persons or classes of persons, one of the classes being her own heirs at law. Did she create five different contingent remainders, “a contingent remainder with a quintuple aspect” one might say, or four such remainders and one rever-sionary interest.
The Government says that she did the latter. It says that-according to the law of New York, if an owner makes a conveyance and uses language such as would create a remainder interest, if the interest were given to persons other than the grantor’s heirs, the language is, presumptively, ineffective if it purports to create a future interest in the grantor’s heirs, and the interest remains undisposed of in the grantor, and passes to his heirs by descent, if he does not make other disposition of the interest in his lifetime or by his will. The doctrine, known as the doctrine of “worthier title” is of ancient origin and is akin to the Buie in Shelley’s case. The reason for the latter rule was an inheritance tax reason, that the crown should not be deprived of the feudal dues payable upon an inheritance, by the device of setting up the title of land for two generations by conveying to one for life with remainder to his heirs.
The New York doctrine, of which the leading case is Doctor v. Hughes, 225 N. Y. 305, opinion by Judge Cardozo, *42 in effect treats a purported conveyance to one’s heirs as being presumptively, in legal effect, a conveyance to one’s self, and says that since inertia would have accomplished all that the purported conveyance accomplished, and since title by inheritance is “worthier” than title by purchase, the heirs, if they in fact ever get the property will be regarded as having gotten it by inertia, rather than by the purported conveyance to them.
The doctrine does not have the irremediable effect which the Rule in Shelley’s case had when it was in full flower. If one then conveyed to A for life and then to his heirs, no amount of explanation that he did not mean to convey a fee simple to A would prevent the conveyance from having that consequence. That was the correct attitude, so long as there was an important tax policy involved in the rule. The rule of course outlived the policy by centuries. The “worthier title” doctrine is only presumptive in effect. As we understand it, if the grantor makes evident in the conveyance that he does not intend to create a future interest in himself, or in his estate at his death, but in that individual or those individuals who may turn out to be his heirs at law when he dies, then the grantor has, by his conveyance, parted with the interest, and the described individuals take by the conveyance and not by descent.
To one not learned in New York law it would seem that the conveyance itself would, in most instances, be sufficient evidence of the intent of the grantor. But Judge Cardozo’s successors have been obliged to search for circumstantial evidence of the intent of the grantor.
The plaintiff relies on Engel v. Guaranty Trust Co., 280 N. Y. 43, 47, where the court emphasized that the rule was only presumptive, and did not apply it in a case fairly comparable to the instant one. He relies on Richardson v. Richardson, 298 N. Y. 135, decided in 1948, where the court again did not apply the rule, but analyzed and considered all the principal cases, and said that the New York decisions had attached considerable importance to at least three factors which were present in the Richardson case. They were (1) that the settlor has made a full and formal disposition of the corpus of the estate, i. e., disposed of the principal on sev *43 eral contingencies other than having it revert to himself, (2) that the settlor has made no reservation of power to grant or assign an interest in the property in his lifetime, and (3) that he has reserved only a testamentary power of appointment.
All three of these factors were present in the instant case. As to (1) we have seen that, upon the termination of the life estates, the property might have gone to any one of five different persons or classes of persons, and that only one of the five contingent takers was the heir of the grantor. As to (2) we take it to mean that the grantor has reserved no power to grant or assign the corpus of the property in his lifetime, and that was true in the instant case. The third factor was also present in our case. In Commissioner v. Hall’s Estate, C. C. A. 2, 153 F. 2d 172, it was held that there was no reversionary interest, though the grantor reserved a life estate in himself, and provided that if other interests following the life estate should fail, the property should be divided among his next of kin.
The Government urges that the purported trust created in Edward was a “dry trust” which, by the Statute of Uses and the comparable New York law, was no trust at all and which therefore left or placed the legal interests in the property, in those persons who would have had equitable interests if the trust had been valid. We think the trust was by no means “dry”. The right of occupancy of Jessie and her husband during their lives was at their own option. If they had chosen not to occupy the land, the trustee would have had a most complicated task of renting and collecting rents, deciding whether and for how much and on what terms to sell the property if the life tenants would consent to sell it, and if it was sold, investing and conserving a very large sum of money.
But we also think that it is immaterial whether the trust was an active trust, or no trust at all. We think that if Jessie had by a deed of conveyance not purporting to create a trust, granted the present and future interests which Costa-bell’s deed granted, the “worthier title” question and its answer would have been just the same.
*44 The Government urges that the fact of Jessie’s life estate is important, since it was an assignable interest in her. The plaintiff says that it was not assignable, since such a trust is, in New York, a spendthrift trust. We are surprised that one should be able to create a spendthrift trust for himself. Further, the plaintiff’s contention assumes that there was an active and effective trust. But we regard all this discussion as immaterial. The existence of a power in the settlor to assign during his lifetime, which is discussed in the cases, must relate to a power to assign an interest in the corpus. The normal power to assign which is an incident of a reserved life estate, would seem to have no relation to the disposition of the principal of the property after the life estate is ended.
We conclude that the decedent did not have a reversionary interest within the meaning of section 811 (c) (2) and that the plaintiff is entitled to recover, with interest as provided by law, and judgment will be entered to that effect. The amount of the recovery will be determined in further proceedings under Buie 38 (c).
It is so ordered.
Laramore, Judge; Whitaker, Judge; Littleton, Judge; and Jones, Chief Judge, concur.
FINDINGS OF FACT
The court, having considered the evidence, the report of Commissioner Wilson Cowen, and the briefs and argument of counsel, makes findings of fact as follows:
1. Plaintiff is the executor of the last will and testament of Jessie I. Bartlett, deceased, who died on September 3, 1947, a resident of the County and State of New York, leaving a last will and testament which was duly admitted to probate by the Surrogate’s Court of New York County, New York, on October 1, 1947, on which day plaintiff was duly appointed by said court as executor thereof. Plaintiff duly qualified as such executor and thereafter acted and is now acting as such executor.
2. On March 28,1927, in the City and State of New York, by deed dated March 28, 1927, recorded April 6, 1927, in *45 the office of the County Clerk of Suffolk County, New York, in liber 1260 of deeds, at page 562, Jessie I. Bartlett conveyed certain real property situated near Amagansett, Suffolk County, New York, to one Charles J. Costabell. The conveyance read in part as follows:
That the party of the first part, in consideration of One Hundred ($100.) dollars lawful money of the United States, paid by the party of the second part, does hereby grant and release unto the party of the second part, his heirs and assigns forever,
[Here follows a description of the property]
Together with the appurtenances and all the estate and rights of the party of the first part in and to said premises; To Have and To Hold the premises herein granted unto the party of the second part, his heirs and assigns forever.
In witness whereof, the party of the first part has hereunto set her hand and seal the day and year first above written.
In Presence of:
(Sgd.) Jessie I. Bartlett (L. S.)
3. The real property conveyed by the deed was known as “Peebarsett Dunes” and consisted of about 13 acres of land with a dwelling house on it.
4. On the same date, March 28,1927, in the City and State of New York, by deed dated March 28,1927, recorded April 6, 1927, in the office of the County Clerk of Suffolk County, New York, in liber 1260 of deeds, at page 557, the said Charles J. Costabell conveyed the said real property to Edward E. Bartlett, Jr., son of the decedent, as trustee, for the uses and purposes therein stated. The conveyance read in pertinent part as follows:
This indenture, made the 28th day of March in the year 1927, between Charles J. Costabell, unmarried, residing at 264 Covert Street, in the County of Kings, City and State of New York, party of the first part, and Edward E. Bartlett, Jr., residing at 320 West 86th Street, in the County, City and State of New York, as Trustee, party of the second part, and Edward E. Bartlett and Jessie I. Bartlett, his wife, residing at Amagansett, Suffolk County, State of New York, parties of the third part,
*46 WITNESSETH :
That the party of the first part, in consideration of One Hundred Dollars ($100.) lawful money of the United States, and other good and valuable consideration, paid by the parties of the second and third parts, does hereby grant and release until the party of the second part, as Trustee, and to his successors and assigns forever.
[Here follows a description of the property]
Together with the appurtenances and all the estate and rights of the party of the first part in and to said premises.
To have and to hold the above granted premises unto the party of the second part, his assigns and successors forever, in trust, nevertheless, to receive the rents, issues, profits and income derived therefrom and to pay therefrom the taxes, assessments, insurance and all other charges and expenses incident to the performance of the trust hereby created, for the joint use and benefit of Edward E. Bartlett, and his wife Jessie I. Bartlett, parties of the third part hereto, during their joint lives, and thereafter for the sole use and benefit of the survivor of them, during the remainder of his or her life.
Subject, however, to the rights of Edward E. Bartlett and Jessie I. Bartlett, the parties of the third part, and each of them, during their joint lives and of the survivor of them during the remainder of his or her life, to use and occupy the said premises at any time or times, and the party of the first part does hereby grant and release unto the parties of the third part the right to so use and occupy the said premises without the payment of rent, but subject to the payment of taxes, assessments and other charges against the said premises. The parties of the third part, and the survivor of them, may make such alterations and changes to the said premises as they, he or she may deem advisable, without being liable for waste, permissive or voluntary.
Upon the death of the survivor of said Edward E. Bartlett and Jessie I. Bartlett, the trust hereby created shall terminate and the corpus thereof shall descend and be conveyed or paid as follows:
In the event their son Edward E. Bartlett, Jr., the party of the second part hereto is then alive, to the said Edward E. Bartlett, Jr., absolutely and forever; or
In the event their son, Edward E. Bartlett, Jr., is not then alive, to such person or persons, natural or corpo *47 rate, as the survivor of said Edward E. Bartlett and Jessie I. Bartlett, appoints by his or her last Will and Testament; or
In the event their son, Edward E. Bartlett, Jr., is not then alive and said survivor has not appointed any person to take the corpus, to such person or persons who would take the corpus had said survivor died intestate, seized or possessed of the corpus.
Should the party of the second part die or cease for any reason to act as Trustee hereunder, the office of Trustee shall thereafter be filled by Irving T. Bartlett, now residing at Nassau Boulevard, Great Neck, Long Island, New York, a son of said Edward E. Bartlett and Jessie I. Bartlett, and should Irving T. Bartlett be not then alive or refuse to act or thereafter die or cease for any reason to act as Trustee, the office of Trustee shall be filled by American Trust Company, a corporation formed and existing under the laws of the State of New York, having its principal place of business at No. 135 Broadway, in the Borough of Manhattan, City and State of New York.
The party of the second part, or his successor in Trust, while acting as Trustee hereunder, may with the consent of Edward E. Bartlett and Jessie I. Bartlett, during their joint lives and thereafter with the consent of the survivor of them, sell, lease or mortgage any or all of the above described real property, free from the trust imposed thereon by this indenture, at such time or times ana for such price or prices, and upon such terms and conditions, for cash or for credit, as he or it may deem advisable, subject to such consent, and the party of the first part hereby grants to the party of the second part and his successors in Trust such power subject to such consent.
In the event said real estate or any part thereof is sold, the proceeds of the sale or sales shall be held in trust by the Trustee hereunder upon the same terms and conditions as the said real estate would be held in trust had it not been sold, and the Trustee hereunder shall be and is empowered to invest such proceeds in any investments or securities he or it may deem safe and judicious and neither he nor it shall be limited in the investment to those securities in which Trustees are authorized to invest trust funds by the laws of the State of New York.
No bond or other security shall at any time be required of any individual Trustee hereunder nor shall any indi *48 vidual Trustee be liable to any person for his acts as Trustee except for his own individual malfeasance.
And the said Charles J. Costabell covenants that he has not done or suffered anything whereby the said premises have been encumbered in any way whatever.
5. At the time of the above-described conveyance, Charles J. Costabell had no beneficial interest in said real property.
6. On March 28,1927, when the above-described real property was conveyed to him in trust, Edward E. Bartlett, Jr., lived in the house located thereon with his mother and father. The father, Edward E. Bartlett, died on September 24,1942, and shortly thereafter his wife, Jessie I. Bartlett, moved to an apartment in New York City. Edward E. Bartlett, Jr., continued to live in the house after the death of his father. Since 1943, he has been living mostly in Florida but spends the summers in the house at Peebarsett Dunes.
7. Edward E. Bartlett left a last will and testament, which was duly admitted to probate by the Surrogate’s Court of New York County on September 24, 1945, on which date plaintiff was duly appointed as executor of his father’s estate.
8. Prior to the death of his father, plaintiff had not seen the deed of trust, which is set out in finding 4. He had believed that the property belonged to his brother, Edward E. Bartlett, Jr., but after he saw the deed of trust he was not certain as to the effect of the reserved power of appointment contained therein. He discussed the matter with his mother and also mentioned to her the possible effect of the power of appointment on her estate taxes. At her suggestion, he discussed the question with his attorney, William B. Conklin. He called on his attorney for a two-fold purpose. First, he wanted to make sure that Edward E. Bartlett, Jr., would receive the real estate without any reservation or legal involvement of any kind. Second, he wished to relieve his mother’s estate from the payment of any additional Federal estate taxes that might accrue by reason of the power of appointment reserved to her in the deed of trust. Plaintiff’s attorney recommended that Jessie I. Bartlett execute a release of the power of appointment reserved in the deed of trust, and plaintiff communicated this information to his *49 mother, who readily agreed to execute a release. Plaintiff then requested Mr. Conklin to prepare the document, and it was executed by Jessie I. Bartlett at her apartment in New York City on February 11, 1943. The release read as follows:
Know all men by these presents, that I, Jessie I. Bartlett, life beneficiary named in a certain indenture made the 28th day of March, 1927, between Charles J. Costabell, party of the first part, Edward E. Bartlett, Jr., party of the second part, and Edward E. Bartlett and Jessie I. Bartlett, parties of the third part under the terms of which I have power of appointment under certain conditions, do hereby release, relinquish and surrender any power or right which I may have by virtue of said indenture to dispose of such trust fund by my last will and testament, intending by this instrument to extinguish completely every such right and power vested in me by said indenture.
9. Jessie I. Bartlett executed the release in order to make certain that her son, Edward E. Bartlett, Jr., would receive the real property without any reservation or obligation, and to relieve her estate from the payment of any Federal estate taxes that might accrue by virtue of the reserved power of appointment.
10. At or about the time she signed the release, Jessie I. Bartlett executed a new will and testament. The will previously made by her had been mutilated by a small addition she had written in it for the purpose of making a bequest of $2,000 and some clothing to her niece. Aside from the bequest to the niece, the new will did not involve any material change from the previous will.
11. As stated in finding 1, Jessie I. Barlett died in New York City at the age of 85 years on September 3, 1947.
12. Jessie I. Bartlett executed the release of the power of appointment approximately five months after the death of her husband. At that time, she was 82 years of age and was living alone in her apartment in New York City. She had been afflicted with anemia for many years, but this condition had, to a large extent, cleared up by 1943. She had had heart palpitations for many years, and this condition existed in 1943. At or about the time the release was signed, her *50 physician, who had attended her infrequently since 1925, treated her at her apartment, because she had a temporary condition of diarrhea. At that time, she had some high blood pressure due to arteriosclerosis, but her physician did not consider that her blood pressure or the condition of her heart was dangerous. The decedent was aware of the condition of her health in 1943.
13. The relinquishment of decedent’s reserved power of appointment on February 11,1943, was made more than two years before her death.
14. At the time of her death on September 3, 1947, the decedent left surviving her two sons, plaintiff and Edward E. Bartlett, Jr., who were, under the laws of New York, her only heirs-at-law and next-of-kin.
15. The parties have stipulated that if it is held that the language of the trust agreement created a reversionary interest under the express terms of the instrument, the value of the reversionary interest immediately prior to the death of Jessie I. Bartlett exceeded five percent of the value of the corpus of the trust.
16. On March 3,1949, plaintiff, as executor, filed with the Collector of Internal Revenue, a Federal estate tax return of the estate of the decedent. The return showed a gross estate of $41,456.31, allowable deductions of $3,752.69, no net estate for basic tax or for additional tax, and no estate tax due.
In the return, plaintiff reported the said trust under Schedule G, “Transfers”, and valued the real property at the date of the decedent’s death at the sum of $46,000, but claimed that the value thereof was not properly includible in the decedent’s gross estate.
17. On J anuary 12, 1950, the Commissioner adjusted the return by adding to the gross estate the sum of $46,000, representing the value of the property conveyed in trust on March 28,1927, and computed a gross estate of $87,456.31, allowable deductions of $3,752.69, no net estate for basic tax, and a net estate of $23,703.62 for additional tax.
18. The Commissioner further determined a deficiency of estate tax thereon, together with a penalty, as follows:
*51 Tax_$2,118. 51
Penalty_ 317. 78
Total_ 2,436.29
19. On April 4, 1952, plaintiff, as executor, paid to the Collector of Internal Bevenue the amount of $2,436.29, for the tax and penalty so determined, plus interest of $394.51, or a total of $2,830.80.
20. On December 30, 1953, plaintiff duly filed with the Director of Internal Bevenue, Upper Manhattan District, New York, a claim for refund in the amount of $2,830.80, together with interest thereon. In the claim for refund, which is in evidence as plaintiff’s exhibit 4, plaintiff contended, among other things, that since the decedent had released the reserved power of appointment pursuant to the permission granted by Section 403 of the Bevenue Act of 1942, as amended by the Joint Besolution of Congress, adopted December 17, 1942, the value of the property transferred in trust should not have been included in decedent’s gross estate.
21. On or about November 2,1954, the Assistant Begional Commissioner, Appellate, New York City Begion, notified plaintiff that the claim for refund would be disallowed for reasons stated as follows:
It is the opinion of this office that the decedent retained a reversionary interest in the trust instrument which substantially exceeds five percent of the value of the property transferred and is taxable under the provisions of Section 811 (c) (3)* of the Internal Bevenue Code of 1939, as a transfer intended to take effect at or after decedent’s death. It is also held that the relinquishment by the decedent on February 11, 1943 of her reserved power of appointment was made in contemplation of death.
22. Plaintiff’s claim for refund was filed within two years after the date of the payment of the tax, penalty and interest sought to be recovered herein. At the time plaintiff’s petition was filed, six months had elapsed since the claim was filed and less than two years had elapsed since the mailing of the notice of disallowance of the claim.
*52 CONCLUSION OF LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiff is entitled to recover, with interest as provided by law, and judgment will be entered to that effect. The amount of recovery will be determined pursuant to Rule 38 (c) of the Rules of this court.
In accordance with the opinion of the court and on a memorandum report of the commissioner as to the amount due plaintiff, it was ordered May 8,1951, that judgment for the plaintiff be entered for $2,830.80, together with interest from April 4, 1952, as provided by law.

An error, the reference intended being Sections 811 (c) (1) (C) and 811 (c) (2).