M. Valeria RICHARDSON, as sole bene-
ficiary and distributee of the assets of
the Estate of Laura V. Richardson, de-
ceased, Plaintiff,

v.

THE UNITED STATES of America,
Defendant.

Civ. No. 4352.

United States District Court
D. Wyoming.

Jan. 12, 1961.

Lathrop, Lathrop & Tilker, Cheyenne, Wyo., for plaintiff.

John F. Raper, Jr., U. S. Atty., Cheyenne, Wyo., and John Kilgariff, Atty., Tax Division, Dept. of Justice, Washington, D. C., for defendant.

KERR, District Judge.

By this action plaintiff seeks to recover the sum of $37,611.07, which represents the deficiency of estate tax liability assessed by the District Director of Internal Revenue, together with the sum of $6,813.27 interest, being a total of $44,424.34, which was paid under protest by plaintiff. The District Director based his determination of the deficiency on the theory that the deceased, Laura V. Richardson, enjoyed not merely a life estate in the assets of the Richardson Trust Association, but rather, that she possessed a fee simple interest in the properties of the trust.

This suit is brought under Title 28 U.S.C. §§ 1340, 1346(a) and 1402(a). Plaintiff filed the required claim for a refund asserting that the aforesaid payments were required to be made due to the erroneous, wrongful and mistaken assessment and collection by the defendant through its District Director of Internal Revenue. Defendant denied such claim. Plaintiff bottoms her claim for the refund on the theory that decedent had the right during her lifetime merely to receive the income from the Richardson Trust Association and that nothing from said trust passed to her estate upon her death. Plaintiff asserts, also, that the trust agreement does not expressly reserve a reversionary interest in Laura V. Richardson, but that if a reversionary interest is found to have existed, its value immediately preceding the death of said decedent does not exceed 5% of the value of the transferred property.

Laura V. Richardson died testate on January 5, 1955. The parties have stipulated that her last will and testament, which was duly admitted to probate gave all her property in equal shares to her brothers and sister, Warren, Clarence and Valeria. The executor of the Estate of Laura V. Richardson paid the estate tax to the District Director of Internal Revenue in the amount of $148,586.70. On March 24, 1959, the Director determined a deficiency of estate tax liability in the amount of $53,699.67, which was later reduced to $37,611.07.

Since the intentions of the Richardson family are declared and preserved in the documents in evidence before this Court, it is necessary to recite them in some detail. The inter vivos transfer occurred in 1921. In that year the Richardson family comprised the Mother, Mary A. Richardson, and the children: Victoria and her husband, Iver Johnson, Warren, Emile, Laura V., the above-named decedent, and Clarence and M. Valeria, now the only survivors of the Richardson family. On June 25, 1921, Emile Richardson

executed a Declaration of Trust in which he recited his ownership of royalty interests as trustee for certain named companies and individuals and in which he set forth the percentage of the respective interests of each of the companies and individuals. The interests of each of the above-named members of the Richardson family were declared to be 4.25%. He covenanted to convey the royalty interests held by him as trustee to an association owned by the said companies and individuals, and it was stated that the shares in such association would be divided in the same proportion as the royalty interests.

The next document in point of time is the Trust Agreement executed October 11, 1921, by the Royalty Holding Syndicate. In this agreement Emile Richardson transferred his trusteeship to the Royalty Holding Syndicate. Title to the royalty interests was not changed. The declared purpose of this substitution of trustees was "to facilitate the collecting of the revenue from said property and to distribute same to the equitable and beneficial owners herein named and heretofore represented by Emile Richardson, Trustee". The Royalty Holding Syndicate agreed to pay to the beneficial and equitable owners the proceeds from any rents, royalties, or sales derived from the lands described in the agreement. The Royalty Holding Syndicate, consideration having been given therefor by each of the beneficial owners, agreed with the trustee, Emile Richardson, and with the beneficiaries, that it would "at all times except as herein provided, hold and safely keep, dispose of and apply said income from the above-described property" for the beneficial owners, one of which was the Richardson Trust Association, owning 665 shares. Provision was made for the distribution of the cash, credits, or securities remaining in the possession of the Royalty Holding Syndicate at the termination of the trust on October 11, 1941, in proportion to the ownership of the shareholders.

On December 3, 1921, the eight members of the Richardson family as beneficial owners of certain royalty interests executed an "Agreement and Declaration of Trust" whereby it was mutually agreed that their beneficial interests should be held by Emile Richardson as trustee, each member of the family owning ⅛th interest in and to the proceeds. In this agreement it is declared that "the proceeds either from the profits or the sale of, all or any part, shall accrue to the benefit of each beneficial owner during his, or her, *lifetime* and shall be designated as a *life estate*; * * *". It was further agreed that "the ownership under this beneficial trust agreement *ceases to exist and terminates with the death of any of the parties hereto and reverts to the benefit of the surviving* owners of the interests under this agreement". The parties agreed to the organization of a common law trust and to the issuance of ownership certificates to the parties; *they could sell or assign their interest only to each other.* The limitation of their rights appears in the following sentence: "It is specifically agreed that none of the owners of beneficial rights under this Declaration of Trust shall have any right to ask for a division or a sale of the real property or any interest in the real property, other than the interest in the proceeds from said property as specified herein and any further interest in the property that may revert to the surviving owners under this Declaration of Interest". (Emphasis added.)

Another "Declaration of Trust" was executed on December 6, 1921, by Warren, Emile and Clarence B. Richardson as trustees. They refer to the instrument dated December 12, 1921, designating the Richardson Trust Association to transact the business for the trust property and trust funds. It is stated that the trustees shall hold the property in trust for the benefit of all shareholders of the Association in proportion to the number of shares held by each; that the beneficial interests in the trust shall be divided into eight shares; that the shareholders of the Association shall have no legal right to trust property or to any title therein or the right to call for a

partition or division of the same, the shares giving only the right to a division of the profits and to a division of the trust funds upon the dissolution of the trust; that the trust shall be for a period of twenty years and that upon the death of a shareholder his or her rights shall succeed to the rights of the original shareholders.

From the minutes of the Richardson Trust Association on December 12, 1921, is another "Declaration of Trust", reciting that the Richardson Trust Association has received from the Royalty Holding Syndicate certain certificates for 665 units or shares representing 34% of the royalty interests held by the Royalty Holding Syndicate as trustee for the owners. According to this declaration, the Richardson Trust Association has no ownership in the certificates except to hold them as trustee and conduit for the owners. The 34% represents the sum total of the respective interests of 4.25% of the eight members of the Richardson family, Victoria and Iver Johnson's interests, however, being combined and payable to Victoria only. This instrument also refers to the period of twenty years as the life of the trust.

The principal disputed aspects of the documents are (1) the duration of the trust, and (2) the status and disposition of the trust res.

Plaintiff's Exhibits Nos. 2, 4 and 11 state that the term of the trust and of the Richardson Trust Association shall be for a period of twenty years. On the other hand, plaintiff's Exhibits Nos. 1 and 3 contain no such limitation. These latter documents set up the trust res of the royalty interests, and the life estate in the members of the Richardson family. The twenty year limitation appears only in the agreement by the Royalty Holding Syndicate to pay to the Richardson Trust Association the proceeds from the royalty interests, the Minutes from the Richardson Trust Association and the Declaration of Trust by the Association. In effect, these documents create the machinery by which the trust and life estate are to operate.

The trust was created for a single purpose, namely, to insure the beneficiaries that during their lives they would receive the proceeds from the royalty interests. A beneficial owner, the plaintiff herein, still lives. The trust, therefore, was not accomplished within the twenty years and is not yet terminated. 3 Scott on Trusts, 2d Ed., Sec. 334, Page 2432. Both the Royalty Holding Syndicate and the Richardson Trust Association are still performing according to the terms of the aforementioned instruments. The evidence clearly shows the intent of the parties that so long as a beneficial owner lives the Royalty Holding Syndicate should pay the proceeds from the royalty interests to the Richardson Trust Association, which in turn distributes the proceeds according to the percentage held by the living beneficial owner. There is no evidence to support the defendant's contention that the original trust terminated in 1941.

For a complete and accurate comprehension of the status and disposition of the corpus of the trust one must scrutinize and attempt to harmonize the terms used by the parties. Admittedly they are confusing. It is impossible to reconcile some of the declarations in the various instruments. The difficulty is not insurmountable, however, as it arises from the repetitious and general language used by the parties. The context as a whole is meaningful.

It is true that the Declaration of Trust dated December 12, 1921, and copied from the minutes of the Richardson Trust Association reports that the beneficial certificates of ownership "may be assigned by and with the consent of all the beneficial and equitable owners". Likewise, in the Declaration of Trust dated December 6, 1921, and filed for record in the office of the County Clerk and Ex-Officio Register of Deeds, Laramie County, Wyoming, it is declared that evidence of the ownership of the "beneficial interest" in the trust shall be in the form of negotiable certificates. In Plaintiff's Exhibit No. 3 it is stated that the certificates are "non-negotiable".

■ Defendant relies on the instruments of transfer made between 1923 and 1927 by Mary A. Richardson, Victoria Johnson and Clarence B. Richardson to elicit the intention that they wished to and did convey their share of the royalty interests. (Plaintiff's Exhibits 5, 6, 7, 8 and 9). The form of the first three instruments is identical, reciting therein that the assignor is the owner of a beneficial certificate and that "under said beneficial certificate of ownership I am entitled to a certain undivided interest in and to all profits and distribution that may be made by said Richardson Trust Association". The assignor thereupon transferred all his "right, title and interest in and to said property * * * ". The total instrument expresses a conveyance of the property right of the assignor which was the right to the proceeds only. The other assignments executed by Clarence B. Richardson refer to the amount of money held by the Richardson Trust Association and then he purports to transfer his "royalty interests" and the proceeds therefrom. He could not assign more than he owned, and the assigned certificates carried with them "only a right to the division of the profits and to a division of the trust funds upon the dissolution of the trust".

■■ The entire plan of the parties and all the instruments pertaining thereto must be considered as a whole. Looking again to the trust agreement and instrument of transfer, the term "beneficial interest" relates only to the interest in the proceeds from the royalty interests. It is this interest alone, not the corpus of the trust that is transferable.

After carefully studying and comparing all the documents and having listened to the testimony of the witnesses I am convinced that the parties to the Agreement and Declaration of Trust and the original Declaration of Trust divested themselves of any control over the royalty interests. Where title to the trust property is beyond the control of the settlor-decedent, as in the case at bar, it is not taxable as part of the value of his gross estate. Reinecke v. Northern Trust Co., 278 U.S. 339, 49 S.Ct. 123, 73 L.Ed. 410. In return for the conveyance of the royalty interests to the trustee, the Richardson Trust Association received certificates of 665 units or shares which represented "an ownership of 34% of the Royalty interests". This percentage is the aggregate of the 4¼% of the royalty interests owned by the eight Richardsons. These certificates were non-transferable. The beneficial owners relinquished "any right to ask for a division or a sale of the real property or any interest in the real property". Under Wyoming law, royalty interests are real property. See Dame v. Mileski, Wyo., 340 P.2d 205; Hageman & Pond, Inc. v. Clark, 69 Wyo. 154, 238 P.2d 919; Denver Joint Stock Land Bank of Denver v. Dixon, 57 Wyo. 523, 122 P.2d 842, 140 A.L.R. 1270. The life tenants under the Richardson trust are not entitled to use the trust property nor have they any choice as to the disposition of the corpus.

To recapitulate my analysis of the Agreement and Declaration of Trust, the eight members of the Richardson family were the "beneficial owners" of certain royalty interests. The "beneficial interest" was declared to be an undivided one-eighth interest in and to the proceeds from the royalty interests. The proceeds were stated to accrue to each beneficial "owner" during his life. The "ownership" (i. e., of the beneficial interest in the proceeds) ceases to exist at the death of the beneficial owner, whose interest thereupon reverts to the surviving owners. The beneficial owners had the right to convey to each other only their respective interests, i. e., their beneficial interests in the proceeds, since the royalty interest certificates were nontransferable. This is the only logical construction to be placed on the instrument of transfer and the trust agreement and it is the only construction consistent with the general plan and intention of the parties. 89 C.J.S. Trusts § 92, p. 923.

Mr. L. E. Parker, who has full and first-hand knowledge of the Royalty Holding Syndicate, the Richardson Trust Association, and the Richardson men testi-

fied that there was never any discussion of the disposition of the corpus of the trust and that the only purpose of the trust was to provide an income from the proceeds of the royalty interests to benefit the Richardson family during their lifetime. M. Valeria Richardson testified that it was her understanding that she would receive only the income from the royalty interests during her lifetime and that she gave no thought as to whether any of the trust property would be hers at some later date.

In their testimony it was clear that both Valeria and Clarence Richardson were talking about the income, not the corpus of the trust. When Valeria testified that the last survivor would end up with "all the property" it was apparent to me that she was still discussing the income property referred to in her earlier testimony.

I am forced to disregard some of the testimony of Mr. Richardson which is relied upon by defendant, for it is directly contradictory to the documentary evidence to the effect that the last survivor was the "remainderman" who could devise or do whatever he wanted to with "the property". He testified that nobody had anything but a life interest. But, contrary to one part of his testimony, I believe that even the last survivor has only a life interest. There was no provision in any of the documents for the vesting of the remainder interest upon the death of all the life tenants. No instrument refers to the final disposition of the royalty interests.

My conclusion that the parties had no assignable or transferable interest in the corpus of the trust is conclusively supported, I believe, by Paragraphs 7 and 8 in the Declaration of Trust dated December 6, 1921. The gravity of these declarations leads me to quote them here in full:

"7. The shareholders of this Association shall have no legal right to trust property or to any title therein or the right to call for a partition or division of the same, a dissolution of the trust, or an accounting, but shares hereunder shall be personal property, giving only the rights in the instrument and certificates thereof specifically set forth, carrying only the right to a division of the profits, and to a division of the trust funds upon the dissolution of the trust.

"8. The death, insolvency or bankruptcy of any shareholder, the transfer of his or her interest by sale, gift, devise, or descent, or otherwise, during the continuance of this trust shall not operate as a dissolution of this trust nor shall it have any effect whatever upon the Association, its operation or mode of business, but his or her heirs, assigns or representatives shall simply and only succeed to the rights of the original shareholder."

I cannot agree with counsel for the government that the ownership of the parties under the trust agreement of October 11, 1921, was declared to be a fee interest by Emile Richardson. That instrument was merely an agreement by the Royalty Holding Syndicate to act in the place of Emile Richardson as trustee for the beneficial owners to whom the proceeds of the royalty interests were to be paid. The parties are therein referred to at all times as the "equitable and beneficial owners".

The only reference to the conveyance of the royalty interests appears in the original declaration of trust wherein Emile Richardson covenanted and agreed to convey such interests to each of the parties, or to their successors, heirs or assigns, or to an association owned by them, "as they may direct or require". As is evident, Emile Richardson conveyed the royalty interests to the Richardson Trust Association and there they remain to this date. Valeria Richardson, the youngest member of the family, is now seventy-nine years of age, and Clarence Richardson is over ninety years of age. Valeria Richardson has succeeded to all the proceeds from the royalty interests. The corpus of the trust is yet to rest, which it will do some day by the

terms of the trust and not by any voluntary act of the beneficiaries under the trust. See Helvering v. St. Louis Union Trust Co., 1935, 296 U.S. 39, 43, 56 S.Ct. 74, 80 L.Ed. 29.

■■ The terms of the trust, however, do not expressly provide who shall receive the trust property upon its termination. This trust will terminate by operation of law upon the death of the last life tenant, because the purpose of the trust will then cease to exist. In the absence of express residuary or remainderman provisions, the trustee holds the trust property "upon a resulting trust for the settlor or his successors in interest". 3 Scott on Trusts, 2nd Ed., Sec. 345.3, page 2525.

■ The alleged interest of the deceased, Laura V. Richardson, in the corpus of the trust is not includable in her estate for the reason that it comes within one of the exceptions in Section 2037 of the Internal Revenue Code of 1954. 26 U.S.C.A. § 2037. Decedent did not retain a reversionary interest in the property transferred which would arise by the express terms of the instrument of transfer. The term "reversionary interest" is defined in the statute as the possibility that the transferred property may return to the settlor or his estate or may be subject to power of disposition by him. To be taxable as part of the gross estate of the decedent that reversionary interest must arise by the express terms of the trust agreement.

Presumably Congress used the word "express" with the intention that it carry its ordinarily accepted meaning. C. I. R. v. Marshall's Estate, 3 Cir., 1953, 203 F.2d 534. It means "directly and distinctly stated", "not merely implied or left to inference". Webster's New International Dictionary of the English Language, 2nd Ed., 1945. Clearly in the documents in the instant case no express terms were used to retain a reversionary interest. The statute is not satisfied by substituting the word "possibility" of reverter for "express" reservation of reversion. It is literally impossible to contend, as does defendant, that decedent retained a reversionary interest by the express terms of the trust instrument. All the evidence militates against such contention. "There was no discussion about the corpus" said the witness who was the business confidante of the Richardson men. The statute does not embrace a potential right of the heirs of the decedent to inherit the trust res. Bartlett v. United States, 137 Ct.Cl. 38, 146 F.Supp. 719. It is a general rule of law that when doubt exists in the construction of a taxing statute it should be resolved in favor of the taxpayer. Hassett v. Welch, 303 U.S. 303, 314, 58 S.Ct. 559, 82 L.Ed. 858.

■ Defendant attempts to construe the Agreement and Declaration of Trust as the creation of a joint tenancy taxable under Section 2040 of the Internal Revenue Code of 1954. 26 U.S.C., 1958 Ed., § 2040. The facts and the law do not support this contention. All the elements of a trust are present in the instant case. There is the trust res or legal estate, which has been reposed in the confidence of the trustee, for the benefit of the beneficial and equitable owners of the equitable estate. Dallas Dome Wyoming Oil Fields Co. v. Brooder, 1939, 55 Wyo. 109, 127, 97 P.2d 311. I cannot subscribe to the government's theory that the aforesaid agreement constitutes an agreement by the parties that they should hold the property in joint tenancy. All their acts and documents support their intention to convey the property to a trustee and to enjoy the proceeds therefrom during their natural lives.

In the light of the foregoing analysis of the facts before me, and the unambiguous dictates of Section 2037 of the Internal Revenue Code of 1954, I am of the opinion that the three conditions of taxability therein contained are not present in the case before me; that Laura V. Richardson, the decedent, did not retain a reversionary interest which arose by the express terms of the instrument of transfer; and that the alleged interest of said decedent in the corpus of the trust should not have been included in the decedent's gross estate for estate tax purposes.

Holding this view I need not consider the contention that the reversionary interest of decedent exceeds 5% of the value of the transferred property. I find that plaintiff has paid an estate tax in excess of the amount due and owing the government and she is therefore entitled to recover the amount of $37,611.-07, together with interest paid by the taxpayer thereon in the amount of $6,-813.27, together with interest thereon since the date of payment and costs of this action.

Plaintiff will prepare findings of fact and conclusions of law, together with judgment in accordance with this memorandum opinion within 20 days from the date hereof and the clerk will enter an order accordingly.